UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 13 |
| | : | |
| HERMAN FRANCIS DELONE, JR., | : | Bankruptcy No. 05-13430DWS |
| | : | |
| Debtor. | : | |

# ORDER

**AND NOW**, this 21st day of September 2005, upon consideration of the Motion for Relief of Secured Creditor Wilshire Credit Corporation ("Wilshire" or "Movant"), as Servicer for the Homecomings Financial Network, Inc. ("Homecomings") for Relief from the Automatic Stay Under Section 362(d) (the "Motion");

**And** this contested matter having come before the Court on an evidentiary hearing on July 26, 2005;

**And** the Court having found, based on the evidence elicited, that (1) Wilshire was the servicer for Homecomings which acquired the mortgage on Debtor's residence from Washington Mutual and that Debtor's refusal to make mortgage payments on the grounds that he owed nothing to Wilshire or Homecomings was unwarranted; and (2) while there was no evidence at the initial hearing that would allow me to determine the amount of mortgage

arrears,[1] it was clear that Debtor's Chapter 13 plan was not confirmable without regard to his treatment of Wilshire's claim;[2]

**And** the Court having explained the defects in Debtor's Chapter 13 plan[3] and having directed Debtor to get counsel[4] if he was serious about protecting his $400,000 home;

**And** having entered an Order on July 26, 2005 treating the hearing as preliminary and allowing the stay to remain in effect, 11 U.S.C. § 362(e), and directing Debtor to file an amended Chapter 13 plan and pay the current mortgage payment on or before August 1, 2005;[5]

**And** a final hearing having been held on August 1, 2005 at which the Court learned that while the current mortgage payment was made, that Debtor had not retained counsel but

---

[1] Debtor claimed no knowledge, and Movant had no witness. The evidence elicited at the final hearing allows a quantification of the minimum amount of the arrears. See note 2 infra.

[2] The debtor's home is valued on his Schedules at $400,000 with a judgment in mortgage foreclosure entered March 10, 2003 in the amount of $244,706.10 plus interest from January 3, 2003 at $37.81 per diem. Exhibit D-2. Thus, there is at least $100,000 equity in this property. Wilshire filed a proof of claim in this case in the amount of $287,767.82 and $99,114.33 in arrears. (After the preliminary hearing Debtor filed an objection solely to the $10,236.62 of attorneys' fees thus acknowledging arrears of almost $90,000. Exhibit D-3.) Notwithstanding that fact, the Debtor's Chapter 13 plan provided for payments of $500 for the first 12 months and $1,342 for the next 48 months for aggregate funding of approximately $70,000.

[3] To begin with and without regard to Wilshire's claim, the Debtor's plan must meet the "best interests of creditors" test. 11 U.S.C. § 1325(a)(4). With $100,000 in equity, a plan funding of $70,000 is insufficient because creditors would receive less than they would in a case under Chapter 7. I also cautioned Debtor about the step-up in his plan which would require a basis for the considerable increase in payments in year two through five.

[4] Debtor is an attorney but claims no knowledge of bankruptcy although this is his third case. Exhibits 4 and 5.

[5] Having rejected Debtor's standing argument which was the sole basis for not paying the mortgage currently, Debtor was directed to make current payments if he wanted to be given the opportunity to file an amended plan.

instead had filed an amended plan which was even more legally deficient than the last plan;[6]

**And** Debtor having filed two prior Chapter 13 cases, both of which were dismissed on motions filed by the Chapter 13 trustee for lack of payment;[7]

**And** despite the Court having given Debtor the opportunity to secure legal advice and file an amended plan, Debtor's plan is patently unconfirmable and relief from stay for cause is warranted;[8]

---

[6] The plan contemplates payments of $412.00 per month for 60 months, thus being funded at $24,720 while he is still retaining equity of $100,000 in the home. The payments are earmarked for taxes and unsecured creditors. The plan makes no pretense of paying Wilshire from plan funding but rather contemplates that Wilshire will receive payments of $1,550 per month for 30 years, presumably directly from Debtor. Notably, the monthly payment is approximately the amount of the current mortgage payment. Debtor states that since the mortgage has merged into the judgment, he will pay the judgment over 30 years "outside the plan." There is no right under bankruptcy law to pay a judgment over 30 years. A Chapter 13 plan may not provide for payments for a period in excess of five years. 11 U.S.C. §1322(d). Labeling it a payment outside the plan does not alter that reality. More significantly, this is a obligation secured by a lien on real estate that is the debtor's principal residence and the rights of a holder of such a claim may not be modified by the Chapter 13 plan. 11 U.S.C. §1322(b)(2). While it would not be a modification to reinstate the accelerated mortgage, the condition of so doing is curing the default. It has been long held that associated with the right to cure defaults in § 1322(b), is the ability to de-accelerate the mortgage and resume the original payment schedule so long as there has been no foreclosure. In re Taddeo, 685 F.2d 24, 26 (2d Cir. 1982). See also In re Clark, 738 F.2d 869 (7th Cir. 1984); Grubbs v. Houston First American Savings Ass'n, 730 F.2d 236 (5th Cir. 1984). In effect, Debtor's plan contemplates a reinstatement of the accelerated mortgage without curing the default. As the plan does not pay the mortgage arrears, it does not cure the mortgage default and the mortgage cannot be reinstated. In re Cruz, 152 B.R. 866, 868 (Bankr. S.D. N.Y. 1993). The fact that Debtor claims to be paying off the judgment, not the mortgage is irrelevant since the lien of the mortgage survives the foreclosure and must be dealt with consistent with §§1322 and 1325.

[7] Case 03-18586 was filed June 3, 2003 and dismissed April 8, 2004. Case 04-31182 was filed August 17, 2004 and dismissed December 16, 2004. Plans were not confirmed in either case. Exhibits 5 and 6. This case was filed on March 15, 2005. Through these serial filings Debtor has prevented foreclosure by Wilshire at a properly noticed sheriff's sale for over two years.

[8] Courts in this district have concluded that evidence of a debtor's post-petition default in mortgage payments meets the mortgagee's initial burden of production in establishing "cause" for relief under Section 362(d)(1). E.g., In re Skipworth, 69 B.R. 526 (Bankr. E.D. Pa. 1987); In re Wright, Egan & Associates, 60 B.R. 806 (Bankr. E.D. Pa. 1986); In re Keays, 36 B.R. 1016 (Bankr.
(continued...)

<u>In re Herman Francis deLone, Jr. - Bankruptcy No. 05-13430DWS</u>

It is hereby **ORDERED** that:

1. The Motion is **GRANTED**.

2. There being no legal basis for an award of attorneys' fees for prosecution of this Motion, Movant's request for attorneys' fees is **DENIED**.

                                          DIANE WEISS SIGMUND
                                          Chief U.S. Bankruptcy Judge

<u>Copies to</u>:

Herman Francis deLone, Jr.
478 St. Davids Avenue
Wayne, PA  19087

Herman Francis deLone, Jr.
P.O. Box 361
Wayne, PA  19087-0361

Stephen M. Hladik, Esquire
425 West Main Street
P.O. Box 29
Lansdale, PA  19446-0029

William C. Miller, Esquire
Standing Chapter 13 Trustee
P. O. Box 40119
Philadelphia, PA 19106-0119

---

(...continued)
E.D. Pa. 1984). Wilshire met that burden by evidence of Debtor' failure to make post-petition payments from the inception of the case until August when I ordered that the current payment be made as a condition of hearing his defense to the Motion. Once the movant meets its burden, as Wilshire has done, the burden then shifts to the debtor opposing the relief to establish the absence of "cause." 11 U.S.C. § 362(g). <u>See</u> generally <u>Nazareth National Bank v. Trina-Dee, Inc.</u>, 731 F.2d 170, 171 (3d Cir. 1984). In filing a non-confirmable plan that does not contemplate payment to Wilshire but rather unilaterally and without legal basis reinstates and modifies the mortgage, Debtor has failed to demonstrate that there is a viable reorganization in process. Leaving the stay in place to allow this illusory plan to come to confirmation only continues the obstruction of Wilshire without any valid bankruptcy objective being served.